UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK NATHANIEL WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS, et al., <br><br> Defendants. | No.  1:24-cv-01055-SAB (PC) <br><br> ORDER DIRECTING CLERK OF COURT TO RANOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION <br><br> FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF <br><br> (ECF Nos. 24, 26) |

Plaintiff is proceeding pro se in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed November 24, 2025.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that

1

"seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory*/y statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### COMPLAINT ALLEGATIONS

On September 8, 2023, at approximately 4:40 p.m., Plaintiff was singled out by Defendant Doe 1 for placement in administrative segregation pending review by the Institutional Classification Committee (ICC).  Defendant Ayon told Plaintiff that because he was a security threat from previous institution he would be placed in administrative segregation.

Defendants Ayon and Does 1, 2, and 3, placed Plaintiff in administrative segregation where he spent 6 days without his legal property, toothbrush, toothpaste, and lack of telephone access.

Defendants Arce, Gallardo, Maciel, and Delacruz failed and refused to take corrective

2

measures to have Plaintiff's sentence and release date recalculated.

On September 14, 2023, at approximately 10:30 a.m., Plaintiff appeared before Defendants Feliz, Arce, Gallardo, Gonzalez, and Maciel, whom he advised of his August 2023 release date. Defendants Maciel, Delacruz, Hixon, Arce, and Gallardo failed to take corrective action and continued Plaintiff's incarceration.

While Plaintiff was in North Kern State Prison (NKSP) from September to November 2023, Defendants Odeluga, Williams, Shitto, and Bick interfered, ignored, and withheld his medications and soft diet that was prescribed by the Los Angeles County Sheriff Department.

Defendants retaliate against Plaintiff for filing grievances regarding his conditions of confinement.

On September 30, 2023, Plaintiff was not provided his daily shower and medical health care for his inconsistence issues. Plaintiff had several accidents in his sleep which caused problems for him and his cellmate. Plaintiff was also denied outdoor exercise.

On or about September 25, 2008, Plaintiff was subjected to retaliatory parole revocation and labeled as a violent sex offender.

On or about September 11, 2023, upon Plaintiff's return to CDCR, he was denied parole because he refused to sign the sex registration form which was fabricated by Defendants.

On October 11, 2023, Plaintiff was approached by Defendants Chanelo and Johnson about writing inmate grievances and ADA accommodations. Defendants retaliated against Plaintiff for assisting other inmates in filing grievances.

On October 25, 2023, Plaintiff was given an immediate transfer by Does 2 and 3 without notice after being threatened by Defendants Chanelo and Johnson for assisting other inmates.

On this same date, Plaintiff was transferred to Ironwood State Prison by Defendants Payne, Ford, and Martinez whose placed him in leg and waste restraints with a paper jumpsuit. The restraints were used in a painful manner and he was denied use of the restroom during the transport for approximately 12 to 14 hours.

There was not an adequate inmate grievance system to address claims of misconduct by prison officials.

## III.

## DISCUSSION

### A.    Federal Rule of Civil Procedure 8

Rule 8 requires that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (alteration in original). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 may be violated when a pleading "says too little," and "when a pleading says too much." Knapp v. Hogan, 738 F.3d 1106, 1109 (9th Cir. 2013). While Rule 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 555, 557). Moreover, a complaint that is too verbose, long, confusing, redundant, irrelevant, or conclusory may be dismissed for failure to comply with Rule 8. See Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058–59 (9th Cir. 2011) (citing cases upholding dismissals for those reasons).

Here, the bulk of Plaintiff's second amended complaint does not comply with Rule 8. The second amended complaint is, for the most part, comprised of "labels and conclusions," "formulaic recitation of the elements of a cause of action," and " 'naked assertion[s]' devoid of 'further factual enhancement,' " which do not suffice to state a claim. Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 555, 557). The amended complaint is replete with conclusory allegations blaming numerous Defendants for each of the alleged wrongs that have befallen Plaintiff, but does not contain facts to connect each Defendant's actions with an alleged deprivation of Plaintiff's rights. "Threadbare allegations" of a Defendant's personal involvement, in an "attempt to hold him liable does not satisfy the pleading standards of Rule 8, as described in Iqbal and Twombly." Blantz v. Cal. Dep't of Corr. & Rehab., 727 F.3d 917, 927

(9th Cir. 2013).

In addition, the amended complaint repeatedly lumps the Defendants together, making it difficult for Defendants to understand their respective roles in each of the alleged claims. "As a general rule, when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.' " Adobe Sys. v. Blue Source Grp. Inc., 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (quoting In re iPhone Application Litig., No. 11-MD-02250-LHK, 2011 WL 4403963 at *8 (N.D. Cal. Sept. 20, 2011)). "Accordingly, a complaint which 'lump[s] together ... multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).' " Id. (alterations in original) (quoting Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 961 (S.D. Cal. 1996)).

**B.    Federal Rules of Civil Procedure 18 and 20**

A basic lawsuit is a single claim against a single defendant.  Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

The Court advises Plaintiff that each claim that is raised in his complaint must be permitted by either Rule 18 or Rule 20. Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2).  If plaintiff elects to file an amended

complaint he should assert only claims arising from common events and containing common questions of law. See George, 507 F.3d at 607 ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to three the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.") (citing 28 U.S.C. § 1915(g)). Alternatively, plaintiff may elect a single defendant and bring as many claims as he has against that party. See Fed. R. Civ. P. 18(a).

### C. Eighth Amendment/Transportation

Plaintiff contends he was transported ISP on a bus for approximately 12 to 14 hours in restraints and confined to his seat without adequate water and bathroom breaks.

To prevail on an Eighth Amendment claim where the conditions of confinement are challenged rather than the confinement itself, a plaintiff must make two showings. First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the plaintiff must make a subjective showing that the prison official acted "with a sufficiently culpable state of mind." Id.; Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). This means that a prison official may be found liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Whether an official possessed such knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]" Id. at 842.

"Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Wilson, 501 U.S. at 298). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id.

Courts in this and other districts have held that a temporary delay in allowing a prisoner to use a restroom fall short of establishing an Eighth Amendment claim. See, e.g., von Koenigsberg-Tyrvaldssen v. Kohut, 2017 WL 1277457, at *9-*10 (D. Mont. Jan. 20, 2017) (isolated incidents of not having immediate access to a bathroom were insufficient to state a federal constitutional claim; providing summary of similar cases); Samu v. Stewart, 2011 WL 4074781, at *2 (W.D. Mich. Sept. 13, 2011) (finding isolated and temporary refusal or delay in allowing a prisoner to use the bathroom did not support an Eighth Amendment claim); see also Hartsfield v. Vidor, 199 F.3d 305, 309–10 (6th Cir. 1999) (allegations that prisoner was denied use of a toilet for two separate 8–hour periods over two days did not state a claim for violation of the Eighth Amendment); Gerst v. Arpaio, 2012 WL 3228838, at *4 (D. Ariz., Aug. 6, 2012) ("As to Plaintiff's claim that he was deprived of air conditioning, water, and the use of a bathroom for three hours, he has alleged a temporary inconvenience, not a "sufficiently serious" deprivation"); Saenz v. Reeves, 2012 WL 4049975, at *14 (E.D. Cal., Sept. 13, 2012) ("[D]enying Plaintiff access to a toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment.").

A temporary delay in allowing a prisoner to use a restroom falls short of a constitutional deprivation, but the Eighth Amendment is implicated if a prison's restroom facilities are so inadequate that they inescapably result in prisoners urinating or defecating into their clothing. Johnson, 217 F.3d at 733; see also Santos v. Corr. Corp. of Am., No. CV 11-630-PHX-JAT, 2011 WL 1375158, at *2–3 (D. Ariz. Apr. 12. 2011) (prisoner did not allege sufficiently serious deprivation where he was denied use of a toilet for one hour and thirty-five minutes, causing him to relieve himself in a bucket); Saenz v. Reeves, No. 1:09-CV-00557-BAM PC, 2012 WL 4049975, at *14 (E.D. Cal. Sept. 13, 2012) ("[D]enying Plaintiff access to a toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment."); Salinas v. Cty. of Kern, No. 1:18-cv-00235-BAM PC, 2018 WL 5879703, at *4 (E.D. Cal. Nov. 7, 2018) ("Plaintiff's allegation that he was

7

denied access to a restroom and water for approximately nine hours on a single day is insufficient to state a claim upon which relief may be granted."). To state a claim under the Eighth Amendment, a plaintiff must allege not only a sufficiently serious deprivation but also that "the defendant officials had actual knowledge of the plaintiffs' basic human needs and deliberately refused to meet those needs." Johnson, 217 F.3d at 734. A plaintiff may prove such knowledge through inference from circumstantial evidence. Id.

In this instance, the Court finds that Plaintiff has failed to state a cognizable claim for relief. Plaintiff does not allege that the delay in providing him water, absent any specific facts that would support a reasonable inference that he suffered dehydration, placed him in substantial risk of suffering serious harm or actually caused him injury. In addition, the denial of access to a toilet free from restraints and only one break per layover, absent any specific facts that Plaintiff suffered serious harm or actually injury, does not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment. See Hartsfield v. Vidor, 199 F.3d 305, 310 (6th Cir.1999) (denial of water and bathroom for two eight hour periods on two days not cruel and unusual punishment); Schilling v. TransCor America, LLC, No. 3:08–cv–00941–SI, 2012 WL 3257659, *9 (N.D. Cal. Aug.8, 2012) (restricting bathroom use to every three and one half to four hours during a twenty four hour transport does not impose a constitutional deprivation); Gerst v. Arpaio, No. 2:12–cv–01353–PHXRCB (JFM), 2012 WL 3228838, *4 (D. Ariz. Aug. 6, 2012) (denial of air conditioning, water, and use of bathroom for three hours not sufficiently serious deprivation); Wilkins v. Ahern, No. 3:08–cv–01084–MMC (PR), 2008 WL 4542413, *6 (N.D. Cal. Oct. 6, 2008) (housing in cell with clogged toilet for six hours, without a mattress for twelve hours, and a filthy toilet for forty-eight hours does not rise to an Eighth Amendment violation); cf Hope v. Pelzer, 536 U.S. 730, 738 (2002) (finding claim where defendants knew there was a risk of substantial physical harm, unnecessary pain from handcuffing inmate to hitching post for seven hour period, unnecessary exposure to the sun after inmate was required to remove his shirt, prolonged thirst and taunting by guard who spilled water nearby, and deprivation of bathroom breaks that risked discomfort and humiliation). In sum, nothing in the complaint demonstrates that Plaintiff suffered any substantial harm from the denial of water and

8

toilet use during the transport to Ironwood State Prison on October 25, 2023.

Further, although a failure to remove restraints may at times form the basis for an Eighth Amendment claim, this Court cannot conclude that having waist chains and leg irons on for 10 to 14 hours, without additional information, created circumstances that were "objectively, sufficiently serious." Id. at 825-26; see also LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (requiring prisoner to shower while shackled is not cruel and unusual punishment where "the purpose of the restraints is not to injure [plaintiff] or make it difficult for him to shower, but ... to protect staff"); Bosworth v. U.S., CV 14-0498 DMG SS, 2014 WL 2931164, at *5 (C.D. Cal. June 27, 2014) ("The use of shackles to restrain a prisoner, by itself, does not violate the Eighth Amendment.") (citing LeMaire, 12 F.3d at 1457).  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### D.    Conditions of Confinement

Plaintiff contends that he was denied his access to his legal property, toothbrush, toothpaste, and outdoor exercise for 6 days.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane methods of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)).  "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective." Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 927 (9th Cir. 2021) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)). Under the objective requirement, the inmate must demonstrate "conditions posing a substantial risk of serious harm" that present "an excessive risk to [his] health or safety." Norbert, 10 F.4th at 928 (quoting Farmer, 511 U.S. at 834). "The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." Id. (quoting Allen, 48 F.3d at 1087).

The Ninth Circuit has recognized that "exercise is 'one of the basic human necessities protected by the Eighth Amendment.' " Norbert, 10 F.4th at 928–29 (quoting May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)).  In determining whether a deprivation of outdoor exercise is

9

sufficiently serious, the court must consider the circumstances, nature, and duration of the deprivation. Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). "[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes. Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir.1993)).

Plaintiff fails to state a cognizable claim for relief.  Plaintiff's alleged deprivation of his legal property, toothbrush, toothpaste, and outdoor exercise for six days does not rise to the level of an Eighth Amendment violation. See Murillo v. Bueno, No. 1:12–cv–00095–LJO–DLB PC, 2013 WL 1731393, at *1–2 (E.D. Cal. Apr. 20, 2013, adopted in full May 17, 2013) (prisoner not provided with toothbrush, toothpaste, soap, toilet paper, or deodorant for approximately five days while housed in holding cell failed to state a claim); Lopez v. Cate, No. 1:10–cv–01773–AWI–SKO PC, 2013 WL 239097, at *8 (E.D. Cal. Jan. 22, 2013, adopted in full Mar. 19, 2013) (deprivation of toilet paper, toothbrush, and toothpowder for approximately seven days does not rise to level of Eighth Amendment violation); Harris v. Fleming, 839 F.2d 1232, 1234–35 (7th Cir.1988) (depriving prisoner of toilet paper for five days and soap, toothpaste and toothbrush for ten days while housing him in filthy, roach-infested cell was not a constitutional violation); Williams v. Delo, 49 F.3d 442, 444–45 (8th Cir.1995) (placement in strip cell without water, mattress, a toothbrush, toothpaste, deodorant, soap, sheets, blankets, pillow cases, pillows, his legal mail and/or clothing, for four days did not violate Eighth Amendment); see also Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010) (recognizing that temporary denial of outdoor exercise with no medical effects is not a substantial deprivation).  Accordingly, Plaintiff fails to state a cognizable claim for relief.

**E.      Medical Care**

Plaintiff contends that he was denied medical care while confined at NKSP for 47 days while awaiting processing into general population.

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). In the Ninth Circuit, the test for deliberate

10

indifference consists of two parts. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. (internal citations and quotations omitted.)  Second, the plaintiff must show that the defendant's response to the need was deliberately indifferent. Id. The second prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.  Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal citations omitted).  However, an inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983. Id.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).)  In addition, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88, overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122.

Here, Plaintiff fails to state a cognizable claim for deliberate indifference to a serious medical need.  Plaintiff has failed to demonstrate that he suffered from a serious medical condition and that Defendants knew of and disregarded an excessive risk to such condition. Rather, Plaintiff alleges that from September 8, 2023 to November 2023, Defendants N. Odeluga and Williams intentionally interfered, ignored, and withheld medication that were previously

11

prescribed by a Doctor at the Los Angeles County Sheriff's Department.  Defendant Williams said they could not do anything for Plaintiff's "special diet" and severe back pain while housed at NKSP, and he would have to submit another request.   Thereafter, Plaintiff submitted repeated sick call requests and filed several grievances requesting a soft diet, physical therapy, medication for Eczema, and showers.  Plaintiff's allegations are nothing more than conclusory allegations devoid of factual support.  Accordingly, Plaintiff fails to state a cognizable claim for deliberate indifference.

### F.  Racial Discrimination

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.' " Angelotti Chiropractic, Inc. v. Baker, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1) (alteration in original). To state an equal protection claim, a claimant must allege facts plausibly showing that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); see also City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (noting that "suspect distinctions such as race, religion, or alienage" are protected classes for equal protection purposes).  As the Ninth Circuit explained in Thornton:

> The first step in equal protection analysis is to identify the defendants' asserted classification of groups. The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff.

Thornton, 425 F.3d at 1166–67 (citations, internal quotation marks, and alterations omitted).

Plaintiff fails to state a cognizable claim for relief.  Although Plaintiff makes repeated references to "racial discrimination," "influenced by race," these allegations are conclusory and are not accompanied by facts to support a reasonable inference that any Defendant treated Plaintiff differently than those prisoners who were not Black or Muslim. See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or .... 'naked assertion[s]' devoid of 'further

factual enhancement' " is insufficient to state a claim under Rule 8. (quoting Twombly, 550 U.S. at 555, 557).  In addition, there are insufficient facts to find that any Defendant acted with an intent or purpose to discriminate against Plaintiff because of his race or religion. See Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (holding that bare allegations of discrimination against African-Americans "unsupported by any facts as to how race entered into any decisions" were insufficient to state a Section 1983 claim); Miller v. Farris, No. CV 21-9551-SSS (AS), 2022 WL 17079056 (C.D. Cal. Oct. 17, 2022) (recommending dismissal of equal protection claim with leave to amend because complaint did not state facts showing discriminatory intent or different treatment from similarly situated individuals), adopted by 2022 WL 17252580 (C.D. Cal. Nov. 28, 2022).  Beyond Plaintiff's assertion that he is Black and Muslim, he advances no allegations that any Defendant made decisions about him based on those classifications. "Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim ...." Thornton, 425 F.3d at 1167 (citation omitted).  A conclusory statement that he was discriminated against because of his race and/or religion is not sufficient to state an equal protection claim.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

**G.     Classification**

Plaintiff contends that he was falsely classified as a sex offender leading to a life-long registration requirement.

It is well settled that prisoners have no constitutional right to a particular classification status, even if the classification status results in a loss of privileges. Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (expressly rejecting claim that prisoner classification and rehabilitative programs invoked due process protections); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (agreeing that inmate had no constitutional right to classification status and further finding no independent right under state law).  This is because decisions regarding an inmate's classification level or where to house inmates are at the core of prison administrators' expertise. McKune v. Lile, 536 U.S. 24, 39 (2002) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); see also Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).

In addition, Plaintiff alleges no facts sufficient to show that his classification as a sex

13

offender infringed on a protected liberty interest. There are no facts showing the classification was coupled with mandatory behavior modification or imposed any other kind of atypical and significant hardship. See Sandin v. Connor, 515 U.S. 472, 484 (1995) (liberty interest created when prison regulation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). The mere placement in administrative segregation for six days pending clearance after his transfer to NKSP does not give rise to a claim for relief. See, e.g., Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest.") Here, Plaintiff has not adequately alleged he was deprived of a protected liberty interest by being placed in administrative segregation because he has failed to provide specific facts to plausibly allege administrative segregation "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Giles v. Davis, No. 21-15466, 2023 WL 128614, at *2 (9th Cir. Jan. 9, 2023) (citing Johnson v. Ryan, 55 F. 4th 1167, 1180(9th Cir. 2022)). Accordingly, Plaintiff fails to state a cognizable claim for relief.

## H.  Retaliation

The First Amendment protects prisoners' rights to file prison grievances. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). As such, any action taken in retaliation for filing a prison grievance violates inmates' constitutional rights. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). There are five elements to a First Amendment claim in the prison context: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567–68.

To satisfy the causation element, Plaintiff must show that his constitutionally protected conduct was a " 'substantial' or 'motivating' factor" for the alleged retaliatory action. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d at 1310, 1314 (9th Cir. 1989)). "[P]laintiff must show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse action against the plaintiff would not have been

14

taken absent the retaliatory motive.' " Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (as amended) (citation omitted).  An action colored by some degree of bad motive does not amount to a constitutional violation if that action would have been taken anyway. See Crawford-El v. Britton, 523 U.S. 574, 593 (1998); Hartman v. Moore, 547 U.S. 250, 260 (2005) (holding that if retaliation is not the but-for cause, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.").  Retaliation is not established simply by showing adverse activity by a defendant after protected conduct; rather, a plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).  However, "timing can properly be considered as circumstantial evidence of retaliatory intent." Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (quoting Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).

Prisoners have no constitutional right to incarceration in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976).  A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. See Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (citing Meachum, 427 U.S. at 225) (intrastate prison transfer does not implicate Due Process Clause), and Olim, 461 U.S. at 244-48 (interstate prison transfer does not implicate Due Process Clause); see also Stewart v. McManus, 924 F.2d 138 (8th Cir. 1991) (no due process rights implicated in transfer from state to federal prison).

A non-consensual transfer is not per se violative of either due process or equal protection rights, see Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Stinson v. Nelson, 525 F.2d 728, 730 (9th Cir. 1975), and no due process protections such as notice or a hearing need be afforded before a prisoner is transferred, even if the transfer is for disciplinary reasons or to a considerably less favorable institution, see Montanye v. Haymes, 427 U.S. 236, 242 (1976); Johnson, 948 F.2d at 519; see also Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (transfer from work release center back to prison does not implicate due process nor equal protection rights). "It is well settled that the decision where to house inmates is at the core of prison administrators'

15

expertise." McKune v. Lile, 536 U.S. 24, 39 (2002). Nonetheless, prison officials cannot transfer a prisoner from one correctional institution to another in order to punish the prisoner for exercising his constitutional rights. See Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995).

Here, Plaintiff contends that he was transferred in retaliation for assisting other inmates in filing grievances and complaints. However, Plaintiff fails to state a cognizable retaliation claim as the second amended complaint does not specify any particular act or omission by any particular Defendant against Plaintiff. Instead, Plaintiff lumps Defendants together and does not specify each Defendant's role in the purported retaliation. Further, the complaint's conclusory, speculative allegations that acts were done in "retaliation" are insufficient. See Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."); Peoples v. Schwarzenegger, 402 F. App'x 204, 205 (9th Cir. 2010) (affirming dismissal of plaintiff's "retaliation claim because his conclusory allegations did not connect any defendant's alleged misconduct with the alleged infringement of his First Amendment rights"). There are no factual allegations by which retaliation can be inferred. A retaliation claim cannot rely solely on an adverse activity following protected speech. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (explaining that a retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this' " (citation omitted)). There are simply insufficient allegations to plausibly infer that any protected activity described was a substantial motivating factor in the decision to transfer Plaintiff to Ironwood State Prison. Accordingly, Plaintiff fails to state a First Amendment retaliation claim against any Defendant.

## I.    Inmate Grievance Procedure

Inmates do not have a constitutional right to an effective grievance or appeal procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Accordingly, an inmate cannot make a colorable due process claim by generally alleging that the investigation into their grievance was inadequate. See Antonetti v. McDaniels, No. 3:16-cv-00396-MMD-WGC, 2018 WL 11362954, at *7 (D. Nev. May 25, 2018) (finding

16

plaintiff failed to state a cognizable due process claim to the extent plaintiff's claim asserted the inmate grievance system was inadequate); see also Terrill v. Grannis, No. 1:11-cv-00118-AWI-SKO, 2012 WL 5906648, at *8 (E.D. Cal. Nov. 26, 2012) (dismissing for failure to state a claim plaintiff's due process claims based on dissatisfaction with the inmate grievance procedure). Plaintiff's claim is based on complaints related to the inmate grievance process and how his grievance was handled, ECF No. 1 at 8-9, which is insufficient to state a colorable due process claim, see Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640; Antonetti, WL 11362954, at *7.

Plaintiff cannot state an independent claim for relief based on the lack of response and/or the improper processing and handling of his inmate grievance.  Accordingly, Plaintiff fails to state a cognizable due process claim.

**J.      Release from Custody/Proposition 57**

Proposition 57 amended the California Constitution to add section 32, the Public Safety and Rehabilitation Act of 2016, which provides:

(a) The following provisions are hereby enacted to enhance public safety, improve rehabilitation, and avoid the release of prisoners by federal court order, notwithstanding anything in this article or any other provision of law:

(1) Parole Consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense.

(2) Cal. Const. art. 1, § 32 (emphasis added). Section 32(b) directs the California Department of Corrections and Rehabilitation ("CDCR") to "adopt regulations in furtherance of these provisions." Cal. Const. art I, § 32(b).

The "full term for the primary offense" is defined as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." Cal. Const. Art. I, § 32(a)(1)(A).  An indeterminate life sentence under the Three Strikes law is considered an "alternative sentence," see In re Edwards, 26 Cal. App. 5th 1181, 1187 (Cal. App. Sept. 7, 2018), and thus is not a primary offense term that must be served before a prisoner is eligible for parole consideration under Proposition 57. Therefore, a three strikes indeterminate sentence must be "put aside" for purposes of determining the full term of a prisoner's primary offense. Edwards, 26 Cal. App. 5th at 1192.

17

Following the California Court of Appeal decision in In re Edwards, 26 Cal. App. 5th 1181 (Cal. App. 2018) (finding that inmates serving three strike sentences for nonviolent offenses are constitutionally entitled to parole consideration under Proposition 57), CDCR enacted emergency regulations to accord parole consideration to nonviolent offenders indeterminately sentenced pursuant to the Three Strikes Law.  See Cal. Code Regs. tit. 15, §§ 3495-97.

The Due Process Clause does not provide any right "to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." Swarthout v. Cooke, 562 U.S. 216, 220 (2011). When a state enacts a statutory scheme allowing parole, however, the state creates a liberty interest and "the Due Process Clause requires fair procedures for its vindication." Id. The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Connor, 515 U.S. 472, 481–84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

The Supreme Court has characterized as "reasonable" the Ninth Circuit's finding that California law creates a liberty interest in parole protected by the Fourteenth Amendment's Due Process Clause. See Bisel v. Kernan, No. 1:18-cv-00090-DAD-JLT (PC), 2018 WL 11294697, at *9 (E.D. Cal. Aug. 17, 2018) (citing Swarthout, 562 U.S. at 222); Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 12 (1979).  Under Proposition 57, the liberty interest at issue is receiving parole consideration when the standards for parole have been met, and prisoners are entitled to minimal procedures adequate to protect that interest. See Swarthout, 562 U.S. at 220. However, the procedures required for parole hearings under the Due Process Clause are merely an opportunity to be heard and a statement of the reasons for any denial. Id. (citing Greenholtz, 442 U.S. at 12); Miller v. Or. Bd. of Parole & Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in Cooke that in the context of parole eligibility decisions the due process right is procedural, and entitles a prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's decision ....").

In this case, Plaintiff alleges he is being illegally detained and kept past his release date under

18

Proposition 57. The Court takes judicial notice[1] of the California Department of Corrections and Rehabilitation's website, which reflects that Plaintiff had a parole eligibility review on November 1, 2023, and October 30, 2024, and November 5 2025, referral to the board for possible release as a nonviolent offender.[2]  Contrary to his allegations, Plaintiff's inmate record indicates that he did and continues to receive parole eligibility hearings. Thus, it is plain Plaintiff has received the "minimal procedures" necessary to adequately protect his liberty interest in receiving parole consideration. See Swarthout, 562 U.S. at 220.

### K.    Further Leave to Amend

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, a district court may deny leave to amend for "repeated failure to cure deficiencies by amendments previously allowed[.]" Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008); see also In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1097–98 (9th Cir. 2002) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotations and citation omitted).

Because Plaintiff's second amended complaint is deficient for essentially the same reasons as those articulated in the Court's prior screening orders, and because Plaintiff has failed to remedy that deficiency, the Court assesses that Plaintiff cannot cure his pleadings and, thus, that leave to amend would be futile. See Hartman v. CDCR, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belied plaintiff's entitlement to relief).  Plaintiff has already received two opportunities to amend the complaint and was advised of the factual and/or legal deficiencies. Given the continued vague and conclusory nature of Plaintiff's allegations, as well as his repeated

---

[1] See Valles v. Cal. Dep't of Cor. and Rehab., No. 2:20-cv-1905 AC P, 2021 WL 2292616, at *2 n.2 (E.D. Cal. June 4, 2021) (taking judicial notice of plaintiff's parole review information available through CDCR's inmate information page) (citing Fed. R. Evid. 201; City of Sausalito v. O'Neill, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.")).

[2] See https://ciris.mt.cdcr.ca.gov/details?cdcrNumber=BV9457.

19

failures to follow the court's instructions, it does not appear that further amendment would result in a cognizable claim. As a result, leave to amend would be futile and the second amended complaint should be dismissed without leave to amend.

**L.      Motion for Temporary Restraining Order and Preliminary Injunction**

On February 17, 2026, Plaintiff filed a motion for a temporary restraining order and preliminary injunction.  (ECF No. 26.)  Plaintiff contends that he is entitled to injunctive relief because he has been denied medical treatment and his property has been destroyed.  (Id.)

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 576 U.S. 863, 876 (2015) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Here, because it is recommended that this action be dismissed without leave to amend, Plaintiff's motion for a temporary restraining order and preliminary injunction should be denied as moot.

**IV.**

**ORDER AND RECOMMENDATIONS**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1.      The instant action be dismissed for failure to state a cognizable claim for relief; and

2.      Plaintiff's motion for a temporary restraining order and preliminary injunction be denied as moot.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**

**(14)** days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 19, 2026**

STANLEY A. BOONE
United States Magistrate Judge